Okay. All right. For those of you who were not in the courtroom earlier, Happy Valentine's Day, Valentines! And we'll go on to case number three. And it is Appeal 22-2300 and 22-2311 of Creation Supply, Inc. v. George Cherrie, or Cherrie. Okay, and it's Mr. Bishop. Hi, Mr. Bishop. Good morning, Your Honor. May it please the Court, Edward L. Bishop for the appellant. This case is about those, whether those involved in initiating and perpetuating a lawsuit based on dispute have immunity and whether the case against them should be dismissed under 12b-6. In particular here, the defendants are claiming that they have a conditional privilege and a litigation privilege. Neither one of those apply in this case. With regard to what's happened in this case, the conditional privilege applies if the agent's actions were on behalf of or in the interest of their employer. But in this case, it doesn't. And what we have here is we have three people. We have Mr. Hahn, we have Mr. Cherrie, and we have Mr. Block. With regard to Mr. Hahn, he was the adjuster on this case. Although he's an attorney, he's the adjuster with regard to this case. And his initial coverage determination was based on deceit. That's not my finding. That's Judge Koukouras' finding that he told a half-truth to his employer to deny coverage. After he did that, he bootstrapped himself out and he handled the litigation against Creation Supply. He wasn't supposed to do that. Selective's own employer manual says he is not supposed to be involved in this type of stuff. Yet now he has deceived Selective and he's taken care of the litigation that he's not supposed to be involved in. And he continues it on from there. And he goes on and he violates other company policies. He misleads his employer, Selective, as to the status of the case. He violates Illinois insurance law in terms of whether or not he provides adequate explanation why coverage was denied and paying claims. He knows money's due. He even admits money is due to these people. Yet he's not going to pay it. He's violating his own— When you—forgive me, but when you allege that Mr. Hahn had a personal financial interest  How would that not be true of any adjuster for an insurance company? And wouldn't the same be true of Mr. Block's alleged interest in earning additional fees? Well, with Mr. Hahn, it's even different since he's already deceived his employer. Once he's an attorney and he's deceived his employer with regard to whether coverage applies or not, his job is at risk. And when he starts violating Illinois law on behalf of the company, again, his job is at risk. So he is— Yeah, let me tell you my problem. I'm sure you can help. Look, Mr. Hahn, in retrospect, certainly was wrong. Maybe even grossly wrong in his decision, in the decision that he made to deny the insurance claim. But what separates this case from any insurance case when it appears in retrospect that the insurance company's decision to deny coverage was unreasonable? It's not an unusual scenario. And what I'm having trouble with is discerning what would set Mr. Hahn's conduct apart from any other insurance adjuster responsible for making a mistaken, even a badly, really badly mistaken coverage decision. With regard to this case, it wasn't a mistake with regard to coverage. There was a three-day trial with regard to whether or not it was a mistake. During that three-day trial, it was not found a mistake. It was vexatious and unreasonable based on a half-truth. So there's no mistake here. So he's already taking a position that's antagonistic to his employer when he does that. His determination—he's a lawyer, too. He's not supposed to be deceiving his employer, nor is he supposed to be taking positions and doing things that are antagonistic to his employer. He's also not supposed to be violating Illinois insurance law. So that's where he is different. He is taking a position so adverse to his employer that the conditional privilege can't apply. There was no mistake here. When he knew money was owed, he just didn't want to pay it. That's a violation of Illinois insurance law. Again, there's no mistake. He knows the Illinois insurance law. That's what he's supposed to be doing. He doesn't want to do it. That's where his employer could lose its license based on what he's done. He doesn't— Has the trial been set in front of Judge—the new trial been set in front of Judge Koukouras? Yes, it has. It has been set for April 17th. Oh, okay. So with regard to those things, he's taken an antagonistic view. And again, when we look at Mr. Cherry, he's in the same position. Can we—just a shade on Judge Rovner's question. Forget the word mistake. How would your rule not apply to any case where an adjuster makes a decision and then otherwise, in the case, it's litigated to an adverse verdict? What has happened with regard to difference here is there's already been found vexatious and unreasonable conduct. Typically, if they make a mistake, there shouldn't be vexatious and unreasonable conduct in that mistake. Here, it's gone above and beyond. Just—I made an error. Anybody could look at it. Two guys could come up with a different opinion. That was not found here. It was vexatious and unreasonable based on a half-truth. And that's what Judge Koukouras says. That's different than, oh, you know, I did my best. I made an error here. I'm sorry. He actually was found after a three-day trial not to have done that. It wasn't something where he analyzed the policy and came up with his best. He even admitted when he was on the stand. Yeah, I know that intent's not an element here. I'm sorry. I missed you. He even admitted when he was on the stand that he knew with regard to intent it wasn't an element. He knew that. He still denied coverage. So it wasn't a mistake. He knew what he was doing was wrong. That's the difference between I did my best and knowing what you did was wrong. And, again, not paying money. There is absolutely no doubt under Illinois law when there's an undisputed amount that has to be paid, they're supposed to pay it. They're not supposed to drag you through years of fighting and saying that's in the interest of the insurance company. It can't be. You're violating Illinois law. Is it really in the interest of the insured? Again, it's not. They have to drag this case through. So there can't be any conditional privilege when you're violating the law for no apparent reason other than to try to beat the other side into submission. With regard to Mr. Block, again, he knew all of these things were wrong, too. He's representing basically Mr. Hall. He's not representing Selective. He is actually representing Mr. Haunt in his coverage. He has a conflict with regard to that. So he has allowed all of these things to go on under his watch. He's not talking to really Selective. He's going through Mr. Haunt, the roadblock and the whole thing. So, obviously, there's a roadblock. It can't be removed. Everybody knows it's there. We're just going to look the other way and continue it on. That is not in the interest of Selective. It's not in the interest of the judicial system. And that goes with regard to the litigation privilege. If you turn to the litigation privilege, first of all, Mr. Cherry is not an attorney. So the litigation privilege can't apply to him. So then we look with regard to Mr. Haunt. Mr. Haunt has admitted he's not a litigation attorney. It's actually clear. And now, all of a sudden, we're faced with, yes, he is. He's not a litigation attorney. He's clearly stated that in the case in front of the courts. I'm not a litigation attorney, but yet I'm going to claim litigation privilege. Now, I can't be. It's either one or the other. He needs to pick a lane. He never did that. Now, all of a sudden, if you look at the facts of the complaint, he's not a litigation attorney. He's the adjuster. Granted, he's an attorney. Of course, he brought Mr. Block in, his outside counsel. He brought Mr. Block in, but Mr. Block was mainly representing Mr. Haunt, not selective. That's our position with regard to that. He wasn't even supposed to be handling the litigation. Again, it's a violation of the company policy with regard to whether or not he is supposed to handle. If there's a bad faith claim against an insurance adjuster, he should not be involved in the litigation. He should not be handling the litigation. Yet he goes out and hires an attorney. Who's that attorney representing at the end of the day? It's Mr. Haunt. It's not selective. And that's why the litigation privilege should not apply with regard to Mr. Block either. Because once again, he's not really acting in the interest of selective. He's acting in the interest of Mr. Haunt. So again, improperly handling it, going out and hiring your own attorney at the end of the day, that's wrong with regard to this case. So it's, again, securing representation for the client. Here you actually have another client. The client is, at the end of the day, Mr. Haunt and not selective. And again, with regard to Mr. Cherry, none of this can apply to him. And at least at the end, since he breached the contract by not letting us get paid CSI in a timely manner and he knew money was owed, definitely there's a claim against Mr. Cherry with regard to that, especially with regard to his knowledge of the insurance company and how long he has actually been in there. So that's why we believe the facts of this case we have. I believe they say we have nothing but conclusions. We actually have over 40 exhibits. There's not just conclusion that's in this complaint, nor are there just headings in here. There's plenty of facts, especially when a lot of those rest on what we did during a three-day trial in front of Judge Koukouris. And he found there was liability with regard to these people in terms of vexatious and unreasonable conduct. And at that point, unless anybody has any questions, I'll reserve the rest of my time for rebuttal. Anyone? No? OK. Let's see. Who's up first? Your Honor, it's Marcos Riley for Defendant Appellee Hahn. And I'm going to take one issue on behalf of all the appellees and then I'm going to hand off to my colleagues. So I'm planning to address the conditional privilege only. Go ahead. May it please the Court. Marcos Riley for David Hahn and the other appellees with respect to the issue of conditional privilege. This is, after all, an appeal from a Rule 12b-6 dismissal. So what matters is in the complaint, and it's not decided based on the weight, literally, of the complaint. It's a big complaint. It has a lot of exhibits. It has a lot of facts, but the facts don't show that there's personal liability on behalf of the defendants who are all undisputedly agents of selective insurance. This case is unusual because it's essentially derivative. There's already an action pending against the principal. There's already been a finding of liability. It's been up on appeal twice now. They rely heavily on the record in the other case, and everything that's stated in the other case and everything that's proved dictates the liability of the principal and not the agents. So... What are we to make of the allegations that Mr. Hahn and Mr. Block were failing to report certain developments to selective and keeping selective in the dark about how things were going in state and federal courts? Does that sort of allegation lend any support to the notion that they were acting for a personal motive rather than in selective interest? Well, there's a number of allegations about failing to report facts. The first one starts with an opinion letter, and they do say it's an opinion letter from Hahn, which simply characterizes the pleading in the underlying case, the Oregon case, and really all it comes down to is that he said it's an intentional willful infliction case, and he neglected to notice or point out that there's also a gross negligence count, which could trigger, and according to the determination of the other court, did trigger the duty to defend. There's no specific allegation that there were specific facts kept from superiors. The superiors are mentioned, the superiors testified. There has never been a statement from selective in the other case that, hey, we didn't authorize this, we didn't know what was happening. And you can say anything you want. You can say he acted out of personal motive. If you look at Judge DeCora's findings, he does actually take a shot at peering inside Mr. Hahn's head, and what he says, and it's quoted in the complaint, is that Mr. Hahn thought that the insured and its president were law violators. So to the extent that we know what he was thinking, that's what he was thinking. That is not something that gives him any personal advantage. He's acting on behalf of selective. He got it in his head they were bad guys and didn't deserve to be paid, and that's what the record states, and that's pretty much what Judge DeCora said. You could find that in almost any case where an adjuster has decided that the insured shouldn't be paid. There's always details with regard to the claim and with regard to the damages, but the broad picture is the same. This pleading is subject to the Twombly standard. We're not in the no set of facts world anymore. It's not enough to just say, we're suing you and you owe us and pay us, which is what used to be almost enough. So what has to be pled in a factual way, as set forth in the HPI case, which is the leading case from the Illinois Supreme Court on the conditional defense, they have to show that the agents acted solely for their own gain, solely for the purpose of harming the plaintiff, or contrary to selective interests. They have, other than the allegations that Judge Robner's already addressed, that they're getting paid, everybody's getting paid, that's why people work. It doesn't mean you're doing it for yourself. They don't have anything there for the purpose of harming the plaintiff. The allegation that they want to keep their job at this point after they've committed malfeasance. Can you address that one? Well, anytime somebody, with hindsight, does something wrong, they arguably have a personal motivation to keep their job. If that was sufficient, then every employee, not only in the insurance industry, but in any case, would be personally liable, unless you throw yourself on your sword and say I made a mistake. But people tend not to do that, as happened in this case. People tend to get invested in their positions and believe they're right even if they're wrong. Being wrong doesn't mean you're not an agent. I think that's the gist of it. They don't allege a fact other than that. If that were a personal motivation, then I think everybody would have one. Whenever they think their conduct, let alone is wrong, is subject to criticism, they cite a great deal from the claims manual. The provisions of the claims manual are not unambiguous. They talk about should not be involved if you're the adjuster in the coverage litigation, as Judge Roker pointed out. As we pointed out, Mr. Hahn hired Mr. Block. There's no basis for the claim Mr. Block was Mr. Hahn's attorney. Mr. Hahn was not a client. He wasn't retained. He wasn't a party to the case. You can say that about anybody anywhere, that they're really somebody else's attorney, but there's no basis in the evidence. There's no facts to show that. Mr. Block is another attorney who is exercising presumably independent judgment on behalf of selective insurance. Therefore, Mr. Hahn is not solely handling the case. Obviously, they're working together. I'm sure they talk. There's the allegation of illegal conduct based on the insurance code. Again, if anybody violates the insurance code under Section 155, then they'd be personally liable if that's the standard. My six minutes are up. If there's no questions, I'm going to hand over to Mr. Gemboa. Thank you. Thank you very much, Mr. Reilly. Mr. Gemboa. Good morning, Your Honors. Good morning. Good morning. I represent Drew Block, and as was previously mentioned, Drew Block is an attorney who has been representing selective at various capacities over the last 10 plus years. In this case alone, he's been representing Selective Insurance Company for close to 11 years. He represented them at the very inception of the litigation, the declaratory judgment action that was filed in July of 2012. And while Mr. Hahn has since moved on from Selective, Mr. Block continues to represent them and is, in fact, still the counsel of record for them in the case that is going to trial before Judge Koukouris. I think that's an important distinction and one that perhaps Mr. Bishop glossed over. I am before Your Honors to discuss the absolute litigation privilege and why it should apply here to bar the plaintiff's claims against the attorneys that are involved here, both Mr. Hahn and Mr. Block. I think that Mr. Bishop perhaps overstated things a little bit in trying to limit the application of the privilege. It's not just applicable in instances where there is actual litigation pending. The privilege will apply when there is a proposed judicial proceeding during the institution of a proceeding,  so it's not just limited to when the case is pending. There is a pertinency self-limiting requirement. The pertinency requirement is not strictly construed. If there's any ambiguities or any uncertainty, the pertinency requirement is to be found. While the absolute litigation privilege historically applied to communications made during the course of an attorney's representation of a client, the last 10 years or so in Illinois courts have seen the doctrine greatly expanded. And I think its expansion was recognized by Judge Pallmeyer in the underlying case, finding that it specifically applied here because the Illinois policy would be furthered by recognizing this action. So starting in about 2014, the Illinois appellate courts recognized the absolute litigation privilege would apply to allegations of intentional action. In Johnson v. Johnson & Bell, a case where I was a young attorney working at Johnson & Bell, the Illinois appellate court found that Ms. Johnson's claims of emotional distress would be barred by the absolute litigation privilege. And I think that decision is important for two takeaways here. One, the court found that a plaintiff should not be allowed to just recast allegations to try and get around the absolute litigation privilege, and I think that's what we're seeing here a little bit. There's some argument made that claims for intentional interference with contract, since no court has specifically ruled upon the application of the privilege to that claim, the Johnson case instructs that you shouldn't be able to just recast allegations to get around the privilege. It will swallow the rule. Further, the Johnson case instructs that there should not be the plaintiffs or the complainants to try and seek redress from the court in the underlying action. Otherwise, similar to the position we all find ourselves in here, litigation will never end. We're going on 12 years in this action, and I think as plaintiff's own complaint sets forth, this suit serves kind of as an insurance policy in the event that they're not successful in their action against selective, which is obviously inappropriate. Is there any point at which a coverage decision is so obviously wrong and without support that it can support an inference that the adjuster is not acting in his principal's interest? Well, Your Honor, I think that the first district in the O'Callaghan case, it was presented with, well, different circumstances, not a coverage dispute, but certainly allegations of attorney misconduct that are very similar to this case, and allegations such as contriving a bad faith defense, engaging in discovery shenanigans, hiding documents, participating in settlement negotiations in absolute bad faith. The court there found that it didn't matter and that the absolute litigation privilege would serve to bar the plaintiff's claims. I would say that in a not entirely dissimilar matter, Judge Kendall in the Squires Cannon case found that even maliciousness doesn't matter. As long as the attorney is conducting himself in furtherance of his client's interest, suits of this type are barred. And to the suggestion that Block was really Hahn's attorney and not Selective's, your response? Sure. Well, first, I think that is belied by the fact that Mr. Block continues to represent Selective, and the court in the Scarpelli case noted, in that case, the plaintiff was still being represented by McDermott, Will and Emory, and the court said that any suggestion that the firm was not acting in furtherance of the client was belied by the fact, or there was a presumption that the continued representation would dispute any sort of argument to the contrary. And I would also say that even assuming that Mr. Block and Mr. Hahn were somehow motivated by financial gain, the O'Callaghan case suggests that that motivation is not mutually exclusive with furthering a client's interest. So I think in the opinion that Judge Pallmeyer authored, it's replete with instances of her saying, yes, perhaps they could be, if I'm looking at this in a light most favorable to the plaintiffs, yes, they could be furthering their own interests. Everybody wants to make money. Everyone wants to stay employed. But at the end of the day, they are also reducing Selective's coverage exposure, and so can't divorce the two. They're inextricably intertwined. And so I see that I'm up. If there's any other questions or anything I can address, I'd be happy to. Okay. Hearing no voice. Thank you very much, Mr. Campo. And Mr. Eberspacher. Good morning, Your Honors. May it please the court. Edward C. Eberspacher on behalf of the defendant, Eppley George Cherry. I think it is very important with respect to the claims against Mr. Cherry to consider the lay of the land at the time that he first became involved in these transactions. Selective had already issued its initial declination of coverage. Selective had already made the decision to file and prosecute the state court declaratory judgment action. Selective had already decided to appeal Judge Flynn's summary judgment determination that Selective, in fact, did owe a duty to CSI to defend. For CSI's part, it had already settled the trade dress infringement claim in the underlying Oregon action. It had already secured dismissal of the trade dress infringement claims in the Oregon action. In other words, Your Honors, by the time Mr. Cherry first became involved in these issues, Selective had already breached the insurance contract. And for CSI's part, it had already allegedly incurred damages in the form of lost business opportunities, lost business profits, in connection with the settlement it reached with the underlying plaintiff in the Oregon suit. So what did Mr. Cherry do when he did become involved for the first time in December of 2014 after all that had already taken place? He went to his frontline claim professional. He went to Mr. Hahn, the guy in the trenches, boots on the ground. And he said, what's the status of all this? And what did Mr. Hahn report to Mr. Cherry? The financial liability, the amount owed by Selective to CSI is currently unsettled. It's in a state of flux. This issue is pending on appeal. We don't yet know how much Selective ultimately is going to owe CSI in connection with its duty to defend. And my friend on the other side presented this court with a binder of its complaint and exhibits. And those exhibits are to be considered part of the pleading for purposes of deciding a 12B6 motion. And I would point this court to the fact that Exhibit N, Exhibit O, Exhibit AA are all email communications from my friend on the other side, attaching invoices all the way through December of 2014, changing the amount that it was demanding Selective cut a check for. You owe us this much. Here's another email with 15 more invoices. You owe us this much. Two months later, here's another email with more invoices. You owe us this much. When Mr. Cherry came into the picture and asked for a status update, that amount was in flux. We now have the benefit of hindsight. And what have we learned from that hindsight? That the amount that CSI demanded, which totaled nearly $400,000, I think the total of the judgment entered in the state court declaratory action was $392,000 and change. After the second appeal, that amount was reduced. Selective was right in not paying everything that CSI demanded because the final state court judgment was only $195,000. In other words, at the time that Mr. Cherry became involved and CSI was demanding that Selective roll over and cut a check for all of the fees and costs incurred in the Oregon action, what we know is CSI ultimately was claiming nearly double what the Illinois appellate court ultimately said it was entitled to. Now, if that's not in Selective's best interest, from an agent to an employer, I don't know what is. This is not a situation where myself or my co-defendants attorneys are claiming that no mistakes were made. This is not a situation where any of us argued in the district court or on this appeal that Selective didn't make mistakes. We know that Selective made mistakes dating all the way back to July of 2012 when it issued the initial coverage declination. But CSI will have its day in court for that. And as Judge Rovner asked earlier, that trial date is already set. And it can go in front of a jury and make its case. But that does not obviate the conditional privilege that all three of these defendants enjoy. And these claims shouldn't stand. I see that I'm out of time. I would ask this panel affirm Chief Judge Paul Myers' considerate, well-reasoned memorandum opinion in order dismissing both of these complaints with prejudice. Well, thank you very much. And Mr. Bishop. Thank you again. One of the problems we have here is we seem to be litigating a lot of the facts and what happened here. With regard to our complaint, the allegations are to be taken as true at this stage. We're not supposed to be arguing everything that's in there and what had happened and whether people had they didn't know the amount or it was still in dispute. The facts are supposed to be taken as true. We have alleged and we've shown in Exhibit N that they knew $163,000 was due. And now they're arguing, well, we didn't really know. Our complaint says they did. And we actually have a document from Selective that says, yeah, $163,000 is due. Yet they want to argue that fact. That shouldn't be an argument. They're arguing Mr. Cherry got involved. Mr. Cherry knew $163,000 was due. He got involved. And when he saw that, he said don't pay them. Now, if he said don't pay them, that's in violation of Illinois law. You're not supposed to wait until the very end when everything is settled and then determine pay him that much money. Insurance companies are supposed to pay undisputed amounts within 30 days. Mr. Cherry knew an undisputed amount of $163,000. And he said let's not pay them because I'm not happy with them for whatever reason. Let me ask you this. It's clear to me that CSIA is making an argument that vexatious and reasonable conduct, as found by Judge Kocouris, should be sufficient to break the conditional privilege. Are you arguing for a rule broader than that? Or are you saying we can stop at this vexatious and reasonable conduct finding, in your view, and that's sufficient to break the privilege? Are there other allegations? What's the scope of where you see the conditional privilege ending in this case? With regard to this case, when they're taking positions that are antagonistic to their employer, and again, Selective is an insurance company that is supposed to be following Illinois law. And when you do things that are clearly in violation of Illinois law, at this point, yes, the privilege has been abused. You can't claim that you have some sort of— Of course, Selective isn't here. Has Selective ever argued what you're arguing? I've never talked to anybody at Selective. I wouldn't know. Well, I mean— That's been part of the problem. But one thing I can tell you, and it's in the complaint, Mr. Hahn no longer works at Selective. Well, we don't, but that—we don't know why. That's not part of the record, or is it? Well, with regard to our complaint, we allege it's with regard to how we handled— I know the allegations, but it— And one of the things that was found with regard to when there was actually a finding of bad faith and vexatious conduct, Mr. Hahn did not report that to the Illinois Insurance Commission, as he's required to do. So again, the allegations that are in the complaint should—they permit the inference that the privilege was abused, and it doesn't apply, nor the litigation privilege, which is the standard under 12b-6. And therefore, we kindly ask that the district court be reversed, unless you have any other questions. I see my time is up. Anyone? Nope. Thank you. Thank you very much to one and all. And the case will be taken under advisement.